# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **RAY BERNARD WILLIAMS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No. 15-719 (GK)** |
| | : | |
| | : | |
| **DISTRICT OF COLUMBIA,** *et al* | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

Plaintiff, Ray Bernard Williams, brings this lawsuit against Defendants, Daniel W. Merritt and Cory Bines, two police officers with the District of Columbia's Metropolitan Police Department, and the District of Columbia (collectively "Defendants"). On February 22, 2014, Williams got into an altercation with employees of a liquor store. The Officers responded to a 911 call and, upon arriving at the store, arrested Williams. During the course of the arrest, the Officers delivered several blows to Williams which resulted in significant injuries to his head and face.

Williams claims that the arrest and use of force violated the Fourth Amendment, as well as various laws of the District of Columbia. Defendants have moved for summary judgment. Motion for Summary Judgment [Dkt. No. 49]. After consideration of the Motion, the various briefs, and the entire record herein, the Court will deny Defendants' Motion with respect to the claims of excessive force, assault and battery, and intentional infliction of emotional distress against Bines and the District, but will grant the Motion with respect to all other claims.

## I.  BACKGROUND

### A. Factual Background

The facts of this case are largely not in dispute because they were recorded by the liquor store's security cameras, which documented virtually all of the relevant events. Those videos have been submitted to the Court. Exhs. 1 & 2 to Opposition to Motion for Summary Judgment [Dkt. No. 51-1 & 51-2]. The First Video captures what took place in the main area of the store, directly in front of the counter and cash registers. [Dkt. No. 51-1]. The Second Video captures what took place in what appears to be the vestibule of the store. [Dkt. No. 51-2]. Both videos carry synchronized time stamps.

On February 22, 2014, Williams entered DC Metro Wine & Spirits. Defendants' Statement of Undisputed Material Facts ¶ 1 [Dkt. No. 49]. After entering, Williams began to act in an unruly manner. See First Video 20:06:53 (showing him throw an unidentified object at a store employee). Williams then moved outside the view of either camera, and got into an altercation with the store employees. When Williams reenters the frame, two of the store employees have grabbed him and are dragging him to evict him from the store. First Video 20:08:02-20:08:11. Before being thrown out, Williams threw at least one punch at the store employees. Id. They then ejected Williams from the store. Second Video 20:08:09-20:08:20.

Despite being forcibly removed from the store, Mr. William reentered less than two minutes after being thrown out. Second Video 20:10:08. Over the course of the next several minutes, he exited and reentered the store. See First and Second Videos 20:14:45-20:18:20. During this time, he milled about the aisles, drank a beverage, and repeatedly gesticulated at, and said things to, the store employees. Mr. Williams reentered the store a final time, Second Video

-2-

20:18:20, and then proceeded to lean against the store counter for roughly two-and-a-half minutes. First Video 20:18:40-20:21:10.

It is undisputed that sometime after the altercation, during the period when Williams was lingering in and around the store, a store employee called the police to report that Williams had committed assault. Defendants' Statement of Undisputed Material Facts ¶ 4. Merritt was the first officer to arrive on the scene. Id. ¶ 5; Second Video 20:20:35. He then spoke with the store's employees, who identified Williams as the assailant. Defendants' Statement of Undisputed Material Facts ¶ 8. Throughout the thirty seconds after Merritt entered the store, Williams was calmly leaning against the counter. First Video 20:20:35-20:21:05.

While Merritt was speaking with the employee, Bines entered the store. Defendants' Statement of Undisputed Material Facts ¶ 9; Second Video 20:21:00. Within seconds of Bines entering the store, Merritt directed him to arrest Williams. Defendants' Statement of Undisputed Material Facts ¶ 11; First Video 20:21:05-20:21:15. Bines moved towards Williams and placed his right hand on Williams' upper right arm to make the arrest. First Video 20:21:12. In response, Williams jerked his upper body. Id. 20:21:13. Bines let go of Williams and then patted him several times on his left shoulder in an apparent attempt to calm Williams down while Merritt approached them to help make the arrest. Id. 20:21:14-20:21:21. Merritt and Bines then attempted to secure Williams' arms in order to handcuff him but Williams resisted and a struggle began. Id. 20:21:21-20:21:33.

As the Officers attempted to handcuff Williams, the struggle moved from the counter area into the vestibule. Id. 20:21:33. As it continued, Bines and Williams fell to the floor. Second Video 20:21:45. On the ground, both Officers wrestled to secure Williams, with Bines delivering

–3–

three blows in quick succession to Mr. Williams' body. Id. 20:22:00-20:22:05. After these blows, Bines climbed on top of Williams and pinned him to the ground. Id. 20:22:05-20:22:23. While Williams was pinned, Merritt kneeled immediately adjacent to them, attempting to secure Williams' hands. Id. 20:22:23-20:22-59. Williams was pinned to the ground, seemingly immobile, for nearly 30 seconds.

Then, with Williams still pinned to the ground, Bines delivered four additional blows to the upper parts of Williams' body over the course of the next 45 seconds. Id. 20:22:59, 20:23:18, 20:23:17, 20:23:45. Finally, after Bines delivered the fourth and final blow, the Officers were able to gain control of Williams's hands, Second Video 20:23:47, and place him in handcuffs. Id. at 20:24:45.

Two aspects of the altercation are not evident from the video. First, the exact strike point of these four blows is unclear. Williams contends that they were either directly to his head or caused his head to be slammed into the ground. See Plaintiff's Statement of Undisputed Material Facts ¶¶ 22-25 [Dkt. No. 51]. Second, it is unclear what degree of control the Officers had over Williams prior to handcuffing him. Bines' testified that he struck Williams despite having pinned him because: (1) Williams failed to comply with the Officers' commands to place his hands behind his back; and (2) Williams was actively trying to get up from the floor. Plaintiff's Statement of Undisputed Material Facts ¶ 25. Williams disputes this, arguing that he tried to comply by allowing the Officers to secure his hands, but was unable to do so because of the way in which the officers had pinned him. Id. ¶ 26.

Williams remained on the ground, handcuffed, until the paramedics arrived, placed him on a gurney, and carried him out of the store. Second Video 20:24:45-20:41:00. As a result of this

-4-

encounter Williams suffered a broken nose, a head contusion, and a subgaleal hematoma. Plaintiff's Statement of Undisputed Material Facts ¶¶ 32, 33. According to expert testimony, the hematoma is evidence of significant blunt force trauma to the head and possible brain trauma. Id. ¶¶ 33-35.

## B. Procedural Background

Williams filed this lawsuit in the Superior Court for the District of Columbia on February 19, 2014. See Complaint [Dkt. No. 1-2]. The Complaint contained nine counts, alleging: (1) violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments; (2) assault and battery; (3) false arrest; (4) false imprisonment; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) negligence; (8) negligent supervision, retention, and training by the District of Columbia; and (9) respondeat superior liability of the District of Columbia. Id. On May 12, 2015, the District had the case removed from Superior Court to this Court. [Dkt. No. 1].

Subsequently, the Defendants moved to dismiss several of the claims contained in the Complaint. [Dkt. No. 6]. The Court granted the Motion to Dismiss, dismissing Williams' claims under the Fifth, Eighth, and Fourteenth Amendments, as well as his claims of false imprisonment, negligent infliction of emotional distress, negligence, negligent supervision, retention, and training, and respondeat superior liability.[1] Order [Dkt. No. 36]. That left in place Williams'

---

[1] In dismissing the claim of respondeat superior liability, the Court held that the doctrine of respondeat superior is not a free standing tort and thus cannot be its own distinct claim. Nonetheless, it provides a means for Williams to hold the District liable for the conduct of the officers if he can prove that any torts committed by the Officers were committed while working in the scope of their employment. See Memorandum Opinion at 10-11 [Dkt. No. 37].

Fourth Amendment claim, as well as his common law claims of assault and battery, false arrest, and intentional infliction of emotional distress.

Defendants have now moved for summary judgment on all remaining counts. Motion for Summary Judgment ("MSJ") [Dkt. No. 49]. Williams filed an Opposition. [Dkt. No. 51]. Defendants filed a Reply, [Dkt. No. 54], and the Motion for Summary Judgment is ripe.

## II.    STANDARD OF REVIEW

Summary judgment may be granted only if the pleadings, the discovery materials, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006); Fed. R. Civ. P. 56(c). "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Arrington, 473 F.3d at 333 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the case under the substantive governing law. Id.

The burden is on the moving party to demonstrate the absence of any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When a moving party successfully does so, the nonmoving party must show the existence of a genuine issue of material fact by providing "specific facts showing that there is a genuine issue for trial," and "may not rest on mere allegations or denials" to prevail. Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248 (internal quotation marks omitted). The moving party is entitled to summary judgment when the nonmoving party fails to offer evidence sufficient to establish an essential element of a claim on which it will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In reviewing the evidence on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws all inferences in her favor. Johnson v. Perez, 823 F.3d 701, 705 (D.C. Cir. 2016). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment." Barnett v. PA Consulting Grp., 715 F.3d 354, 358 (D.C. Cir. 2013) (internal quotation marks and citation omitted). Accordingly, the Court's role is "not [to] determine the truth of the matter, but instead [to] decide only whether there is a genuine issue for trial." Id.

## III.   ANALYSIS

### A.   Claims that the Arrest Was Unlawful

In Counts 1 and 3 of his Complaint, Williams alleges that his arrest was unlawful. First, in Count 1 he alleges that his arrest violated the Fourth Amendment because it was executed without a warrant and the Officers lacked probable cause to make the arrest. Second, in Count 3 he alleges that his arrest violated the District's law governing warrantless arrests, which requires more than probable cause to arrest an individual for simple assault. See D.C. Code § 23-581(a)(1)(C). The Defendants have moved for summary judgment on both counts.

#### 1.   The Arrest of Williams Was Not Unreasonable and Did Not Violate the Fourth Amendment (Count 1)

The Defendants argue that they are entitled to qualified immunity on Williams' claim that his arrest was unreasonable under the Fourth Amendment because the Officers lacked a warrant.

"In order to protect officers from undue interference with their duties and from potentially disabling threats of liability, qualified immunity shields federal officials from damages suits for actions taken while carrying out their official duties." Fenwick v. Pudimott, 778 F.3d 133, 136-

37 (D.C. Cir. 2015). "To defeat a defense of qualified immunity, a plaintiff must show not only that an official 'violated a constitutional right' but also that 'the right was clearly established' at the time of the violation. Id. at 137 (quoting Saucier v. Katz, 533 U.S. 194, 200–01 (2001)); see also Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014). Both prongs of the qualified immunity analysis present pure questions of law. See Scott v. Harris, 550 U.S. 372, 381 n.8 (2007). In deciding a motion for summary judgment on the basis of qualified immunity, the plaintiff is the non-moving party, and the Court resolves all issues of material fact in her favor. Scott, 550 U.S. at 378-79. This Court has the discretion to determine which prong of the qualified immunity analysis to conduct first. Plumhoff, 134 S. Ct. at 2020.

The Court begins with the first prong to determine whether the Officers violated Williams' constitutional rights under the Fourth Amendment by arresting him without a warrant. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "[A] warrantless arrest by a law enforcement officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Davenpeck v. Alford, 543 U.S. 146, 152 (2004). "Probable cause exists where the arresting officer possesses information 'sufficient to warrant a prudent person in believing that the suspect has committed or is committing an offense.'" United States v. Catlett, 97 F.3d 565, 573 (D.C. Cir. 1996) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Moreover, so long as the arresting officer has "a good faith, reasonable belief" that probable cause exists, then she is still entitled to qualified immunity. Saidi v. WMATA, 928 F. Supp 21, 27 (D.D.C. 1996).

"To determine whether the arresting officer had probable cause or a good faith belief, the court evaluates the evidence from the perspective of the officer, not the plaintiff." Moorehead v. District of Columbia, 747 A.2d 138, 147 (D.C. App. 2000). "The existence of probable cause is a mixed question of law and fact." Pitt v. District of Columbia, 491 F.3d 494, 502 (D.C. Cir. 2007). "The existence of the facts is for the jury, but their effect when found is a question for the determination of the court." Id.

Even when the undisputed material facts are viewed in a light most favorable to Williams, it is apparent that the Officers had probable cause to believe he committed assault. It is undisputed that the store employees called the police to report an assault and, after the two Officers arrived, that a clerk identified Williams as the assailant. See Defendants' Statement of Undisputed Material Facts ¶¶ 4-10. This undisputed eyewitness identification of Williams as the assailant was sufficient to establish probable cause that he had violated DC Code § 22-404, which criminalizes assault. See e.g. Cousins v. Hathaway, CV 12-1058 (RLW), 2014 WL 4050170, *6 (D.D.C. August 15, 2014) (interview of single eyewitness, which officers had no reason to doubt, was sufficient to establish probable cause); Saidi, 928 F.Supp. at 26–27 (eyewitness interviews were sufficient to establish probable cause to arrest suspect for assault). Therefore, they did not violate the Fourth Amendment by failing to secure a warrant before arresting him.

Williams counters that the Officers nonetheless violated the Fourth Amendment because: (1) the Officers failed to interview him to get his side of the story, which he claims would have established his innocence; and (2) D.C. Code § 23-581(a)(1)(C) prohibits a warrantless arrest for assault unless additional statutory criteria are met, and that these criteria were not met in his case. Both arguments fail. First, once the Officers had probable cause to arrest Williams for assault,

they were not required by the Fourth Amendment to interview him to investigate his possible innocence before making an arrest. See Amobi v. District of Columbia Dep't of Corrections, 755 F.3d 980, 990 (D.C. Cir. 2014) ("An officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."). Second, the possible violation of the D.C. Code is irrelevant because the "Constitution's protections concerning search and seizure do not vary with state arrest law." Id. at 989 (internal quotation marks and citations omitted). Thus, even if the Officers arrested Williams in violation of the laws of the District, that has no bearing on the distinct inquiry of whether they violated the Fourth Amendment.

As the Officers had probable cause to believe that Williams had committed assault, they did not violate the Fourth Amendment when they arrested him without a warrant. Therefore, they are entitled to qualified immunity and summary judgment on this claim.

### 2. The Arrest of Williams Was Authorized by the District's Warrantless Arrest Statute and Was Not a False Arrest (Count 3)

Williams claims that even if the Officers had probable cause to believe that Williams had committed assault, thereby satisfying the requirements of the Fourth Amendment, the arrest was nonetheless prohibited by District law. The Defendants argue that the arrest was valid under District law because the Officers believed he would injure the store's customers unless immediately arrested.

An officer in the District may make a warrantless arrest where "a person who [the officer] has probable cause to believe has committed or is about to commit any offense listed in paragraph (2)," one of which is assault,[2] "and, unless immediately arrested, may not be apprehended, may

---

[2] Assault is the first listed offense in paragraph (2). D.C. Code § 23-581(a)(2)(A).

–10–

cause injury to others, or may tamper with, dispose of, or destroy evidence." D.C. Code § 23-581(a)(1)(C) (emphasis added). Thus, under the statute, an officer who has probable cause to believe that an individual has committed an assault may arrest that individual without a warrant if he also has probable cause to believe that the individual will evade apprehension, or cause injury to others, or tamper with evidence of the underlying assault. See e.g. Saidi, 928 F. Supp. at 27 ("the officer may make an immediate warrantless arrest of the alleged offender if the officer believes the offender committed an assault, and may not be later apprehended" (emphasis added)).

The Defendants claim that the arrest of Williams was authorized by the District's warrantless arrest statute because the Officers had probable cause to believe both that Williams had committed an assault and that he "posed a continuing threat to the patrons in the liquor store" unless immediately arrested. MSJ at 8. The Court has already concluded that the Officers had probable cause to believe that Williams committed assault, so the sole question is whether they also had probable cause to believe that he would injure others unless immediately arrested. The Officers point to the fact that "when they arrived to the scene they received a credible report from an employee of the liquor store that Plaintiff had been acting unruly, had assaulted a store clerk and had refused to leave the store" as their basis for believing that Williams posed an immediate threat to the store patrons. MSJ at 8. Thus, the Officers identify only three facts to support their conclusion that Williams posed an immediate threat to store patrons, his "unruly" behavior, his assault of a store employee, and his refusal to leave the store.

The Defendants appear to chiefly rely on the logic that because Williams had just committed an assault, the Officers were justified in concluding that he was likely to commit a further assault unless arrested on the spot. That argument is in significant tension with the text of

−11−

the District's warrantless arrest statute. If the underlying assault that is the predicate for the arrest were sufficient, on its own, to justify a warrantless arrest, that would render superfluous the other statutory bases for making a warrantless arrest. In other words, if police officers could simply point to the underlying assault as a basis for concluding that the arrestee posed a continuing danger to others, there would be no need for the other statutory provisions authorizing a warrantless arrest because the suspect might flee or destroy evidence. As "[b]asic statutory interpretation requires that statutes should be construed 'so as to avoid rendering superfluous' any statutory language," Clement v. District of Columbia Dep't of Empl. Services, 126 A.3d 1137, 1140 (D.C. App. 2015) (quoting Astoria Fed. Savs. & Loan Ass'n v. Solimino, 501 U.S. 104, 112 (1991)), that cannot be.

Police officers must identify the facts and circumstances underlying the assault to demonstrate why the officers believed that the arrestee posed a continuing danger. The Defendants' briefing does not adequately explain why the Officers thought Williams posed a threat to the store patrons, simply pointing to three facts—Williams' unruly behavior, the assault, and his return to the store—and calls it a day.

When the facts known to the Officers are viewed in their totality, they do not reasonably support the belief that Williams would cause injury to the store patrons if not immediately arrested. From the time the first Officer entered the store, the only observation the Officers could make about Williams' conduct was that he was standing peaceably at the counter for thirty seconds. They had no reason to believe he was armed, nor did they have any reason to believe that he was intoxicated. While they had reason to believe he had committed an assault a few minutes earlier, the objective evidence suggested that the assault was relatively minor, see Merritt Dep. 22:12-18 [Dkt. No. 49-2] (describing observing only minor injuries to store employee), and that it was

–12–

committed upon a store employee for attempting to remove Williams from the store. Id. 22:1-5. Though the Officers also believed that Williams had been unruly and refused to leave the store, these actions were all directed at store employees, not patrons. On this set of facts, it is unclear how the Officers could form a reasonable belief that Williams was likely to cause injury to the store's patrons. "Probable cause may not rest on a 'mere suspicion' of criminal activity," and a Court "cannot uphold an arrest based on a[n] [officer's] hunch" that a suspect is about to commit a crime. See Tuckson v. United States, 77 A.3d 357, 365 (D.C. App. 2013) (holding that officers lacked probable cause to believe that defendant would commit a crime in the immediate future).

However, there is an alternative basis to conclude that the Officers had probable cause to believe that Williams posed a threat to others, namely the store employees. See Enders v. District of Columbia, 4 A.3d 457, 469 (D.C. App. 2010) (holding that police officers can prevail on a claim of false arrest "if [they] can show that probable cause existed to arrest for any offense, even if it differs from the offense for which the arrest was actually made, provided that the consequences for the plaintiff probably would have been substantially as unfavorable."). The Officers reasonably believed that Williams had assaulted at least one store employee as a result of the employees' attempt to forcibly remove him from the store. Moreover, they reasonably believed that Williams had returned to the store despite being forcibly ejected.

The fact that he returned is critical. Where an individual is involved in an altercation and, after the altercation ends, returns to confront those he fought, it would be reasonable to conclude that he might attempt to renew the fight. That risk is heightened where, as here, the individual returns after being forcibly thrown out of an establishment, because it is likely that another attempt will be made to remove him, resulting in renewed violence. Confronted with that scenario, it

—13—

would have been reasonable for the Officers to conclude that if they left without arresting Williams, he might restart the fight, particularly if the employees attempted to forcibly remove him a second time.

Consequently, the Officers were authorized to arrest Williams without a warrant because they had probable cause to believe that Williams had committed an assault and that he posed a threat of injury to the store employees if they did not immediately arrest him. Accordingly, the Defendants are entitled to summary judgment on Williams' false arrest claim.

**B. Claims that the Use of Force Was Unlawful**

> **1. Defendants Are Not Entitled to Summary Judgment on the Claim that the Force Used by Bines Was Unreasonable and in Violation of Fourth Amendment (Count 1)**

Williams claims that the four blows Bines delivered after Williams had been pinned to the ground violated the Fourth Amendment because they were unreasonable and excessive. The Defendants have moved for summary judgment on the basis of qualified immunity.

The qualified immunity framework is the same as that used for Williams' claim that his arrest violated the Fourth Amendment: the Court begins by analyzing whether the Officers violated a constitutional right and then analyzes whether the right was clearly established at the time of the violation.

> **a. Bines Use of Force Violated Williams' Right to Be Free From Unreasonable Force**

"Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person. Graham v. Connor, 490 U.S. 386, 394

–14–

(U.S. 1989). "To assess the reasonableness of a seizure, [the Court] must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Johnson v. District of Columbia, 528 F.3d 969, 974 (D.C. Cir. 2008).

The Court "give[s] careful attention to the facts and circumstances of the particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Johnson, 528 F.3d at 974; Saucier, 533 U.S. at 205. The Court "analyze[s] this question from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Plumhoff, 134 S. Ct. at 2020.

"[A] police officer must have some justification for the quantum of force he uses." Johnson, 528 F.3d at 977. The Court "accord[s] a measure of respect to the officer's judgment about the quantum of force called for in a quickly developing situation . . . But as the cases clearly establish, the state may not perpetrate violence for its own sake. Force without reason is unreasonable." Id. at 977. Thus, the use of force must be "undertaken in pursuit of a legitimate end." Id. at 976. Where an officer justifies his use of force as necessary to effect an arrest, the Court asks whether the officer's "actions were reasonably calculated toward the goal of securing the suspect and placing him in handcuffs, while minimizing his opportunity to escape." Id. at 976.

Williams argues that the amount of force used by the Officers to arrest him was excessive, focusing on the four blows delivered by Bines prior to handcuffing Williams. The Defendants argue that these blows were reasonable, and therefore not excessive, because they were necessary to effect the arrest of Williams – i.e. to handcuff him. Thus, the Court must look at the relevant

facts known to the Officers at the time these blows were delivered, resolving any disputed facts in favor of Williams, to determine whether the Officers' conduct was reasonable.

The relevant factors suggest that the Officers' use of force was unreasonable. As to the severity of the crime, the Officers reasonably believed that Williams had committed simple assault, which is only a misdemeanor. It was also apparent that the assault was not particularly serious as the Officers had observed that the store employee had relatively minor injuries at most. Additionally, Williams claims that at the time he was struck he was effectively subdued, pinned to the ground in a prone position for over half a minute and attempting to cooperate with the Officers' attempts to handcuff him.[3] If true, that would suggest Williams was no longer actively resisting arrest, was not a flight risk, and did not pose a threat to the Officers or others. Moreover, the Officers outnumbered Williams and had quickly subdued him after he resisted their initial attempts to handcuff him. Additionally, the Officers had no reason to believe that Williams was armed, and he claims that he never attempted to strike the Officers at any point during the encounter.[4] These

---

[3] The Defendants dispute this account, claiming that Williams attempted to get up and resisted their attempts to handcuff him. The security footage does not conclusively support either parties' account. Instead, a jury viewing the videos could conclude that a reasonable officer would perceive that Williams had ceased resisting and had been subdued. Therefore, the Court must resolve this dispute in favor of Williams in deciding on the Defendants' Motion for Summary Judgment.

[4] The Defendants dispute this account, claiming that Williams attempted to elbow Bines when he first tried to arrest Williams, but the Court must similarly resolve this dispute in favor of Williams. Although Williams can be seen moving some part of his upper body in response to Bines' first attempt to place him under arrest, a jury viewing the security footage could conclude that no reasonable officer would interpret this movement as an attempt to strike the officer. Indeed, Bines reaction to this alleged elbow strike—calmly patting Williams on the back in a reassuring manner—further supports the view that it was not a violent act.

facts further supports the conclusion that the Officers could not reasonably view Williams as a threat.

A jury presented with these facts could reasonably conclude that the Officers' use of force was not "reasonably calculated toward the goal of securing the suspect and placing him in handcuffs, while minimizing his opportunity to escape." Johnson, 528 F.3d at 976. Thus, if a jury were to credit Williams' account that he was prone, subdued, and not resisting, it would be unreasonable to repeatedly hit his head and smash it into the ground in order to secure him in handcuffs.[5] See Mazloum v. District of Columbia Metropolitan Police Dep't, 576 F. Supp.2d 25 (D.D.C. 2008) (repeatedly smashing a subdued suspect's head into the ground is excessive); Ingram v. Shipman-Meyer, CV 12-1915 (GK), 2017 WL 1058114, at *11 (D.D.C. Mar. 20, 2017) ("The use of force on a suspect who has already been subdued is plainly excessive."). Though the goal of securing Williams in handcuffs was a legitimate end, repeatedly striking his head was not a reasonable means of accomplishing that goal once he was subdued. Indeed, Williams presented

---

[5] The fact that Williams was not handcuffed at this stage does not mean he was not subdued. Ingram, 2017 WL 1058114 at *12 n.6. Whether an individual has been subdued does not turn on whether they are handcuffed, but on whether they are under the officer's physical control such that they no longer threaten the physical safety of others or pose a risk of flight. See e.g. Laury v. Rodriguez, 659 Fed. Appx. 837, 844 (6th Cir. 2016) (unpublished) (citing Baker v. Hamilton, 471 F.3d 601, 607 (6th Cir. 2006)); Malory v. Whiting, 489 Fed. Appx. 78, 86 (6th Cir. 2012) (unpublished). Placing an individual in handcuffs is certainly one means of subduing a subject, but not the only one.

Here, Williams claims that Bines had pinned him to the ground in a prone position in which he was unable to move. The security footage supports that claim, though different viewers might reasonably disagree. Under these circumstances, a jury could reasonably conclude that Williams was unable to escape and therefore had been subdued.

expert testimony that there were less intrusive methods that the Officers could have used, such as striking other pain points rather than the head.[6] Klotz Dep. at 42-43, 94 [Dkt. No 51-6].

The Officers justify their use of force largely based on the fact that Williams resisted their initial attempts to handcuff him. While they were certainly entitled to use some amount of force against Williams because he struggled with them, once they had subdued him his earlier resistance could not justify repeatedly and violently striking his head. See Ingram, 2017 WL 1058114 at *12 (The "prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior — including resisting arrest, threatening officer safety, or potentially carrying a weapon." (quoting Miller v. Gonzalez, 761 F.3d 822, 829 (7th Cir. 2014)).

The preceding discussion focuses on the "Officers'" actions because Williams' Complaint alleges that both Officers Bines and Merritt used unreasonable force against him, but both Officers are not similarly situated. The specific acts that Williams claims were excessive—the blows he received after he was subdued—were committed by Bines. As Williams does not argue that any

_____

[6] This is not to suggest that an officer must use the least intrusive means available to them. See e.g. Brooks v. City of Seattle, 599 F.3d 1018, 1025 (9th Cir.2010) ("officers are not required to use the least intrusive means available; they simply must act within the range of reasonable conduct."); Henry v. Purnell, 652 F.3d 524, 546–47 (4th Cir. 2011); Fisher v. City of Las Cruces, 584 F.3d 888, 894 (10th Cir. 2009); Menuel v. Atlanta, 25 F.3d 990, 996-97 (11th Cir.1994); Plakas v. Drinski, 19 F.3d 1143, 1149 (7th Cir. 1994); also Board of Ed. of Ind. Sch. Dist. No. 92 of Pottawatomie County v. Earls, 536 U.S. 822, 837 (2002) (noting that "this Court has repeatedly stated that reasonableness under the Fourth Amendment does not require employing the least intrusive means, because '[t]he logic of such elaborate less-restrictive alternative arguments could raise insuperable barriers to the exercise of virtually all search-and-seizure powers.'" (citation omitted)). Nonetheless, the "availability of alternative methods of capturing or subduing a suspect" is relevant to whether the method actually chosen by the officer was reasonable. Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005).

of Merritt's actions were unreasonable, Merritt is entitled to summary judgment on Williams' excessive force claim.

The same cannot be said for Bines, as there exists a genuine issue of material fact as to his conduct, namely, whether Williams had been subdued, such that he no longer posed a threat or a risk of flight, prior to the time Bines struck Williams in the head. See Johnson, 528 F.3d at 977 (officer not entitled to qualified immunity where "there exists a genuine issue of material fact, namely, whether [suspect's] prone position was threatening or suggested escape."). Were a jury to conclude that Williams had been subdued, these blows to Williams' head would have been unreasonable and excessive. Consequently, the Court turns to the second prong of the qualified immunity analysis.

### b. The Right to be Free From Excessive Force Was Clearly Established at the Time of the Incident

Though a reasonable jury could conclude that Bines used excessive force in violation of the Fourth Amendment, he is still entitled to qualified immunity if the right to be free of such force was not clearly established at the time of the violation, February 22, 2014.

This prong of the qualified immunity analysis "begin[s] by establishing the appropriate level of generality at which to analyze the right at issue." Johnson, 528 F.3d at 975. It is insufficient to ask whether Williams had a right to be free from unreasonable seizure. Id. Instead, the "dispositive inquiry...is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. In this case, the relevant question is whether a reasonable officer would have known that it is unlawful to repeatedly strike a suspect in the head, once that suspect is effectively subdued and no longer has the ability to flee or harm others.

"To determine whether the officers 'strayed beyond clearly established bounds of lawfulness,' [the Court] look[s] first to 'cases of controlling authority.'" Wesby v. District of Columbia, 765 F.3d 13, 26 (quoting Youngbey v. March, 676 F.3d 1114, 1117 (D.C. Cir. 2012) (internal citations omitted)). "If there is no such controlling authority, then [the Court] must determine whether there is 'a consensus of cases of persuasive authority.'" Youngbey, 676 F.3d at 1117 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). The court "need not identify cases with materially similar facts, but ha[s] only to show that the state of the law at the time of the incident gave the officer[] fair warning that [her] particular conduct was unconstitutional." Wesby, 765 F.3d at 26.

In this Circuit, it is a "clearly established rule" that "[a]n officer's act of violence violates the Fourth Amendment's prohibition against unreasonable seizures if it furthers no governmental interest, such as apprehending a suspect or protecting an officer or the public." Johnson, 528 F.3d at 976; see also Abbott v. Sangamon County, 705 F.3d 706, 732 (7th Cir. 2013) ("it was well-established in 2007 that police officers cannot continue to use force once a suspect is subdued" (emphasis added)); Baker, 471 F.3d at 607 ("We have held repeatedly that the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law."). Thus, in Johnson, the Court of Appeals held that a kicking an individual in the groin, once he was prone on the ground and "posed neither a risk of flight nor any danger," is unreasonable. 528 F.3d at 976. And in Mazloum, another member of this Court held that repeatedly smashing a subdued suspect's head into the ground was unreasonable. 576 F. Supp. 2d at 38.

In contrast, faced with circumstances roughly similar to this case, courts in this Circuit have only been willing to grant summary judgment to officers who use less force than Bines did

here. Where a suspect refuses to be handcuffed, suggesting that he may attempt to resist or escape, it is appropriate to forcefully wrench the suspect's arms in order to handcuff him, even if it causes severe pain. Wasserman v. Rodacker, 557 F.3d 635, 641 (D.C. Cir. 2009). An officer may slam an individual, suspected of a violent assault, against a wall in order to secure him in handcuffs, so long as the suspect suffers no significant physical injury. Steele v. District of Columbia Housing Authority, CV 01-1420 (CKK), 2006 WL 335770, *7 (D.D.C. Feb. 14, 2006). And where an individual threatens an officer in a vulnerable position, rushing at him and screaming, it is not unreasonable to punch the suspect three to four times in order to get him to cease his attack. Wardlaw v. Pickett, 1 F.3d 1297 (D.C. Cir. 1993).

These cases were sufficient to give fair warning to Bines that repeatedly striking a subdued suspect in the head with sufficient force to break his nose and inflict a potentially traumatic brain injury was objectively unreasonable. Consequently, summary judgment must be denied as to Bines. Summary judgment will also be denied as to the District because it has failed to establish that it is entitled to judgment as a matter of law on the question of whether Bines was acting in the scope of his employment at the time.

### 2.  Assault and Battery (Count 2)

Williams alleges that the Officers committed an assault and battery in violation of District of Columbia law. Similar to Williams' excessive force claim, Defendants argue that the Officers had a qualified privilege to use force to handcuff Williams and that they are entitled to summary judgment on that basis.

Just as qualified immunity is a shield against liability in Section 1983 excessive force claims, qualified privilege protects officers in common law claims of assault and battery. District

–21–

of Columbia v Chinn, 839 A.2d 701, 705-06 (D.C. 2003). "A police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary." Scales v. District of Columbia, 973 A.2d 722, 730 (D.C. App. 2009). "[T]he test for qualified privilege in an assault and battery suit is both subjective and objective: the officer must subjectively believe that he or she used no more force than necessary, but the officer's judgment is compared to that of a hypothetical reasonable police officer placed in the same situation." Id. at 730. The objective piece of the qualified privilege analysis is "similar to the excessive force standard applied in the Section 1983 context." Dormu v. District of Columbia, 795 F. Supp. 2d 7, 27 (D.D.C. 2011).

Just as the Court concluded that Bines' use of force was not objectively reasonable under the Fourth Amendment, the Court concludes that it was not objectively reasonable for purposes of Williams assault and battery claim. Consequently, Bines is not entitled to a claim of qualified privilege for his use of force, and the Motion for Summary Judgment must be denied as to Bines and the District. Similarly, the Motion for Summary Judgment must be granted with respect to Merritt because the undisputed facts establish that he did not use unreasonable force against Williams.

### C. Intentional Infliction Emotional Distress (Count 5)

Williams claims that the Officers also committed the tort of intentional infliction of emotional distress when they used force against him. Defendants have moved for summary judgment, arguing that the Officers' conduct was insufficiently extreme or outrageous, and thus, could not constitute intentional infliction of emotional distress. MSJ at 12.

To prove intentional infliction of emotional distress, "a plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress." Smith v. District of Columbia, 882 A.2d 778, 794 (D.C. App. 2005). "'[A] serious case of excessive force' can constitute outrageous behavior such that it satisfies a claim of intentional infliction of emotional distress." Harris v. Dep't of Veterans Affairs, 776 F.3d 907, 917 (D.C. Cir. 2015) (quoting Gabrou v. May Department Stores Co., 462 A.2d 1102, 1105 (D.C. App. 1983). "[T]he requisite intent of the defendant can be inferred, either from the very outrageousness of the defendant's acts or . . . when the circumstances are such that any reasonable person would have known that (emotional distress and physical harm) would result." Id. (internal quotations marks and citations omitted).

The Defendants argue that the Officers use of force was not so extreme that it went "beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized community." MSJ at 12 (quoting Waldon v. Covington, 415 A.2d 1070, 1076 (D.C. App. 1980)). However, the D.C. Circuit recently held that the police officers were not entitled to summary judgment on a claim of intentional infliction of emotional distress where the conduct of the officers was similar in all material respects to that alleged by Williams. Harris, 776 F.3d 907. In that case, the plaintiff was ordered to leave a group therapy session by his social worker. Id. at 910. When he refused to leave, the police were called, and when he disobeyed their orders, they forced him to the floor where they punched him and broke his ribs. Id. Just as in this case, the plaintiff contended that he never violently resisted the police, and that the police beat him after he was subdued. Id. at 910, 917. On this set of facts, the Court of Appeals held that the conduct of the police was sufficiently outrageous to preclude summary judgment. Id. at 917.

The facts, when viewed in a light most favorable to Williams, are materially indistinguishable from those in Harris, and similarly preclude summary judgment. Like Harris, Williams contends that Bines beat him after he was restrained, causing broken bones. Like Harris, Williams contends that he was never violent with the Officers. Therefore, just as the actions of the police were sufficiently outrageous to defeat summary judgment in Harris, the materially identical actions of Bines are sufficient to do so here. However, just as with Williams' claims regarding the use of force, summary judgment in favor of Merritt is appropriate because Williams has not identified any actions by Merritt that could reasonably be called extreme or outrageous.

Alternatively, the Defendants argue that the Bines did not recklessly or intentionally inflict emotional distress on Williams. This argument too is foreclosed by Harris, which held that: "the requisite intent of the defendant can be 'inferred, either from the very outrageousness of the defendant's acts or . . . when the circumstances are such that any reasonable person would have known that (emotional distress and physical harm) would result . . . . Such an inquiry is normally a factual question for the jury." Harris, 776 F.3d at 917 (internal quotation marks and citations omitted). In this case, a jury could reasonably infer the necessary intent or recklessness from the actions of Bines, just as they did in Harris.

Finally, the Defendants argue that Williams "has presented no evidence of severe emotional distress." However, Williams gave deposition testimony that he experienced nightmares and flashbacks about the altercation, and that they continued for years after it occurred. Williams Dep. 105:1-107:8. That is evidence of emotional distress. See Restatement (Second) of Torts § 46 (1965) ("Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental

-24-

reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea."). To the extent that the Defendants are arguing that the emotional distress suffered by Williams is insufficiently severe, they do not cite a single case in support of that proposition.

Accordingly, the Defendants' Motion for Summary Judgment on the claim of intentional infliction of emotional distress will be denied as to Bines and the District, but granted as to Merritt.

## IV.   CONCLUSION

For the foregoing reasons, the Court will deny summary judgment on Williams' claims against Bines and the District for excessive force, assault and battery, and intentional infliction of emotional distress, and will grant summary judgment as to all other claims and Defendants.


August 3, 2017

*Gladys Kessler*
Gladys Kessler
United States District Judge


**Copies to:** attorneys on record via ECF